IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. CR07-300-S-EJL |
| Plaintiff, ) | |
| ) | **MEMORANDUM ORDER** |
| v. ) | |
| ) | |
| **MATTHEW WILLIAM LANTZ** ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Before the Court is Defendant Matthew William Lantz's ("Lantz") motion to suppress. The Court, as the finder of fact, is also the finder on issues of credibility and the weight to be given to the testimony offered at the evidentiary hearing. Having heard the testimony, considered the evidence, and reviewed the entire record herein, the Court issues this written decision.

## FACTUAL AND PROCEDURAL BACKGROUND

At approximately 4:00 pm on November 20, 2007, the defendant, William Lantz, was stopped by the local police for violating Idaho traffic laws. After a positive alert from a canine sniff, the officers conducted a search of the vehicle and found a loaded Smith and Wesson .380 pistol, an AR-15 military style assault riffle, ammunition, and a marijuana cigarette. Based on this evidence, Lantz was charged with a violation of 18 U.S.C. §922(g)(1), unlawful possession of a firearm, and 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), criminal forfeiture.

**Memorandum Order -- Page 1**

Lantz filed a motion to suppress the seized evidence, and an evidentiary hearing was held on June 16, 2008. At the evidentiary hearing, Detective John Terry, of the Boise Police Department, testified for the government and Lantz testified on his own behalf. The testimony of Detective Terry and Lantz conflicted. There is a factual dispute as to whether Lantz properly signaled his turns.

Detective Terry testified to the facts as follows. While conducting surveillance of Lantz at the corner of 36th Street and Anderson, Detective Terry observed Lantz drive eastbound on Anderson to 36th Street. Detective Terry began to follow Lantz in an unmarked car. After about fifty feet, Lantz stopped at a stop sign at the corner of Anderson and 36th, turned on his blinker and turned left onto 36th. Detective Terry came to a stop at the stop sign directly behind Lantz. After turning onto 36th Street, Lantz's blinker went off and he continued driving north on 36th Street. 36th Street has two lanes of traffic going in both directions and a center divider. Lantz drove on 36th Street for about two or three hundred feet,[1] changed lanes without putting on this blinker and then turned right onto Anderson without signaling until after he turned.[2] After making the turn onto Anderson, Lantz's blinker came on for about three to four quick blinks. Lantz then proceeded on Anderson Street and turned onto 35th Street without signaling. Anderson and 35th Street is an uncontrolled intersection and it is not possible to proceed further west on Anderson. Detective Terry notified a marked patrol car in the area of Lantz's alleged traffic violations and the marked police car made the traffic stop.

---

[1] Detective Terry admitted at the evidentiary hearing that it could have been less than this.

[2] Detective Terry testified that it took him five to ten seconds to turn onto 36th Street after Lantz turned left.

**Memorandum Order -- Page 2**

Lantz testified that before he initially pulled out onto Anderson, that he saw a marked police car pass in front of him.³  Lantz testified that after seeing the police car he had a heightened sense of awareness of his driving and complied with all traffic requirements.  Lantz pulled out behind the police car and proceeded to the stop sign where he signaled before turning left onto 36th Street.  The marked police car turned right on 36th Street.  After turning onto 36th Street, Lantz signaled a lane change, made the lane change, and then signaled his turn onto Anderson.  He drove straight down Anderson, and signaled a turn onto 35th Street.

## DISCUSSION

Lantz's motion to suppress is based on the claim that the firearms were taken in violation of the Fourth Amendment.  The validity of the motion to suppress turns on what the Court determines actually occurred at the time of the search.  The law is clear regarding what is required of the officers.  Therefore, the testimony offered at the hearing will be the determining factor in whether the evidence should be suppressed.

Under the Fourth Amendment, law enforcement officers may make a brief investigatory stop of a moving vehicle if, under the totality of the circumstances, they are aware of articulable facts leading to a reasonable or well-founded suspicion that the person has been, is, or is about to be engaged in criminal activity.  Terry v. Ohio, 392 U.S. 1, 22(1968).  Traffic violations constitute criminal conduct and provide sufficient reasonable suspicion for an investigatory stop.  Delaware v. Prouse, 440 U.S. 648, 661 (1979).  See also, Whren v. United States, 517 U.S. 806, 810 (1996) ("the decision to stop an automobile is reasonable where the police have probable cause to believe

---

³Detective Terry also testified that a marked patrol car passed in front of Lantz before Lantz initially turned onto Anderson.

**Memorandum Order -- Page 3**

that a traffic violation has occurred).  The Supreme Court has recently affirmed that when an officer has probable cause to believe a person committed even a minor crime in his presence, the constitutionality of the stop or seizure is not in doubt.  See Virginia v. Moore, __ U.S. __, (2008).

The Idaho Code provides the applicable law for what constitutes a traffic violation.  IDAHO CODE §49-808 (2007).  Section 49-808 provides that a driver must signal his intention to turn "for not less than the last one hundred (100) feet traveled by the vehicle before turning."  IDAHO CODE §49-808 (2).  The Idaho Code further states that "no person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal to the driver of any vehicle immediately to the rear when there is opportunity to give such a signal."  IDAHO CODE §49-808 (3).  Thus, if Detective Terry observed Lantz change lanes or turn without signaling for 100 feet before he turned, then Detective Terry would have observed Lantz commit a traffic violation and reasonable suspicion would exist to conduct an investigatory traffic stop.

At the evidentiary hearing, the government has the burden of showing that a warrantless search is reasonable.  United States v. Carbajal, 956 F.2d 924, 930 (1992).   In this matter, the government has the burden of proving that Detective Terry observed Lantz violate Idaho traffic laws.

Lantz argues that Detective Terry never observed Lantz engage in any type of illegal behavior before making the stop and that therefore, the stop and subsequent search were illegal for lack of reasonable suspicion.  The Government contends that because Lantz failed to properly signal, there was reasonable suspicion to conduct the traffic stop.  Because the constitutionality of the stop rests on whether Lantz properly signaled his turns, the sole issue before the Court today is to resolve the disputed facts on whether the initial stop was supported by reasonable suspicion.

In a motion to suppress evidence where the sole issue for the Court is to resolve factual discrepancies, the Court is the finder of fact and determines the credibility of witnesses. Additionally, when a court determines whether reasonable suspicion exists, the court must look at the totality of the circumstances in each case. U.S. v. Arvizu, 534 U.S. 266, 272 (2002). In looking at the totality of circumstances to determine if the stop or intrusion was warranted, "the police officer must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21.

The Court applies these standards to determine whether there was reasonable suspicion to effectuate the traffic stop in this case. Here, Detective Terry states that while he was following Lantz, Lantz failed to properly signal on three occasions. First, Lantz failed to signal a lane change on 36th Street when he moved from the inner northbound lane to the outer lane. Second, Lantz did not signal his turn from 36th Street onto Anderson until after he turned. And third, Lantz did not signal his last turn from Anderson onto 35th Street. [4]

Lantz, on the other hand, states that he signaled the lane change on 36th Street, that he signaled his turn onto Anderson, and that he properly signaled his turn onto 35th.

After considering the testimony and credibility of the witnesses, the Court concludes that, the statements of Detective Terry are more credible and a reasonable suspicion existed to conduct an investigatory traffic stop. Detective Terry has twenty three years of police experience. Many of these years were spent patrolling streets where his primary duties have been traffic control and

---

[4] The necessity of having to signal a turn from Anderson to 35th Street is in question because there is no stop sign, it is not a controlled intersection, and Anderson makes a ninety degree turn into 35th. However, this is not dispositive to the motion to suppress because even if Lantz was not required to signal there, he was required to signal at the two other times Detective Terry alleged he did not.

**Memorandum Order -- Page 5**

traffic violations. His job on the day in question was to conduct surveillance specifically on Lantz. Detective Terry was following Lantz in an unmarked car, a short distance behind Lantz's vehicle. While following Lantz, Detective Terry observed Lantz fail to signal three times. The Court finds based on the map presented at the hearing, that Lantz had adequate time while driving to signal one hundred feet before his turn onto Anderson and to signal a lane change. The Court makes no finding on whether a turn signal was required turning off Anderson onto 35th Street. Further, Detective Terry witnessed at least two traffic violations on the part of Lantz, and any one would be sufficient to create a reasonable suspicion for a traffic stop. Based on the totality of the circumstances and Detective Terry's credibility as an experienced police officer, reasonable suspicion existed to effectuate the traffic stop.

Furthermore, although Lantz stated that he properly signaled and that he did so because he was on heightened awareness due to a marked patrol car that passed in front of him, the events at issue happened over a very short period of time when the detective's job was to observe Lantz and Lantz was looking in his rearview mirror to see where the marked patrol car had gone. The Court finds the detective, who's sole job was to observe Lantz, has a better recollection of the turn signals actually used by Lantz to change lanes and to turn onto Anderson. As such, the government has met its burden to show that reasonable suspicion existed.

**ORDER**

Based on the foregoing, and the Court being fully advised in the premises, it is **HEREBY ORDERED** that Defendant's Motion to Suppress Physical Evidence (Docket No. 12) is **DENIED.**

DATED: **June 26, 2008**

Honorable Edward J. Lodge
U. S. District Judge